UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RONALD D. SORTLAND, and
VIRGINIA S. SORTLAND,

                    Plaintiffs,

v.

MS. COLOMBEL-SINGH, and
MS. D. PATRICK,

                    Defendants.

_____/

Case No. 1:19-cv-644

Hon. Robert J. Jonker
Chief United States District Judge

Hon. Ray Kent
United States Magistrate Judge


**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR,
<u>ALTERNATIVELY, FOR SUMMARY JUDGMENT</u>**

## INTRODUCTION

This case arises from Plaintiff Virginia Sortland's and her son J.S.'s receipt of Social Security benefits.  They received benefits because of their status as a son of Plaintiff Ronald Sortland and a person caring for the son of Mr. Sortland, and through Mr. Sortland's earnings record.  In 2015, the Social Security Administration ("SSA") determined that the SSA had overpaid Mrs. Sortland and J.S., and advised them of its intent to recoup the overpayment.  The SSA also informed them that they could seek a waiver of the overpayment.  Mrs. Sortland and J.S. did so, submitting the appropriate SSA form and supporting documentation.  The SSA denied their requests after review of their submissions and an in-person meeting with Defendant Colombel-Singh, an SSA employee.  Defendant Colombel-Singh documented the decisions in forms SSA-635.  Defendant Patrick signed the forms SSA-635 on August 5, 2016, in a space marked "Approved By."  The SSA began recovering the overpayment shortly thereafter.  Mrs. Sortland and J.S. requested and received a de novo review by an administrative-law judge.  The judge reversed the SSA's determination and granted Mrs. Sortland's and J.S.'s requests for waiver, awarding them their full benefits and repayment of the money already recouped.

Plaintiffs now seek to recover damages from Defendant Colombel-Singh and Defendant Patrick personally under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  Plaintiffs assert that Defendants violated their procedural-due-process rights.

In *Bivens*, the Supreme Court took the extraordinary step of creating an implied cause of action for constitutional-tort violations against individual federal agents.  But, in the forty years since *Bivens*, the Supreme Court has issued a nearly unbroken line of cases in which it has declined to recognize new *Bivens* claims.  Recently, the Supreme Court emphatically confirmed the trend away from *Bivens* and significantly narrowed the circumstances justifying new claims

1

in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). In *Abbasi*, the Court imposed a strict reading of the prior contexts wherein a *Bivens* remedy has been recognized and held that a *Bivens* remedy in a new context is justified only if Congress has not created an alternative remedial structure for protecting the constitutional interest (even if that remedial structure is inadequate) and no other special factors counsel hesitation. Importantly, the Court stressed that a context is new if the case is different in any meaningful way from its previous *Bivens* cases.

In this case, Plaintiffs' *Bivens* claims do not satisfy the Supreme Court's standard. Plaintiffs' claims present a new context because none of the Supreme Court's previous cases recognizing a *Bivens* claim (a total of three) involved SSA employees, monetary federal benefits, procedural-due-process rights, or the comprehensive and complex statutory scheme surrounding Social Security benefits. A *Bivens* remedy in this new context is not justified because the Social Security Act and its regulations provide an alternative remedial structure that protects the alleged constitutional interest, laying out a multi-level decision and review process for the determination of waiver claims. In addition, other special factors—including harm to the SSA's ability to administer benefits and the burden placed on SSA employees—also counsel hesitation. Indeed, the Supreme Court has already refused to create a *Bivens* remedy in the context of Social Security disability benefits. *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988). Plaintiffs' *Bivens* claims fail as a matter of law.

Plaintiffs' *Bivens* claim against Ms. Patrick also fails because she is entitled to qualified immunity. Plaintiffs cannot demonstrate that Ms. Patrick violated their due-process rights at all, let alone rights that were clearly established in 2016. The Social Security Act and its regulations do not require another SSA employee to "approve" Ms. Colombel-Singh's denial of Mrs. Sortland and J.S.'s waiver request. Due process does not compel this Court to add such a

requirement to the comprehensive statutory scheme.  And, certainly, no governing precedent

exists that would have made it clear to Ms. Patrick that due process required her to thoroughly

review and correct any errors in how Ms. Colombel-Singh went about reviewing and denying the

waiver request.

Lastly, Defendants respectfully request that this Court dismiss Mr. Sortland for lack of

standing.  He has suffered no personal injury.  The SSA temporarily withheld Mrs. Sortland's

and J.S.'s benefits—not his.  He cannot satisfy the injury requirement by relying on injuries to

others.

## BACKGROUND

In 2015, Mrs. Sortland and her son, J.S., were receiving benefits from the SSA.  (Compl.

9, PageID.9.)  They received benefits due to their status as a son of Plaintiff Ronald Sortland and

a person caring for the son of Mr. Sortland, and through Mr. Sortland's earnings record.  (*Id.*)

Their benefits were not provided because of demonstrated financial need, although Mrs.

Sortland's benefits were subject to reduction based on her own income.  42 U.S.C. §§ 402

(standards for caregiver and child benefits), 403(b) (reduction in benefits based on income).  The

Social Security Act provides a cap on the amount of benefits that may be paid on an individual's

earnings record.  *See* 42 U.S.C. § 403(a); 20 C.F.R. § 404.403.

In 2015, the SSA determined that Mrs. Sortland's and J.S.'s benefits would need to be

reduced because another of Mr. Sortland's sons became entitled to Social Security benefits on

Mr. Sortland's earnings record.  (*See* Compl. 9-11, PageID.9-11.)  In December 2015, the SSA

notified Mrs. Sortland and J.S. that it had calculated the amount of the overpayments that Mrs.

Sortland and J.S. received before the SSA reduced their benefits to the correct level.  (*Id.* at 9;

Ex. A-1, 12/10/15 Letter from SSA to Mrs. Sortland 1; Ex. A-2, 12/10/15 Letter from SSA to

J.S. 1.)[1]  The SSA informed Mrs. Sortland and J.S. that if they did not repay the overpayment within thirty days, the SSA would withhold their full benefits, beginning in March 2016, until the SSA recovered the overpayment.  (Ex. A-1 12/10/15 Letter from SSA to Mrs. Sortland 1; Ex. A-2, 12/10/15 Letter from SSA to J.S. 1.)  The SSA also advised Mrs. Sortland and J.S. that they had the right to appeal the overpayment and the right to request a waiver of the overpayment.  Regarding the waiver, the SSA informed them:

> Right to Request Waiver: You also have the right to request a determination concerning the need to recover the overpayment. An overpayment must be refunded or withheld from benefits unless both of the following are true:
>
> a. The overpayment was not your fault in any way, and
>
> b. You could not meet your necessary living expenses if we recovered the overpayment, or recovery would be unfair for some other reason.

(Ex. A-1, 12/10/15 Letter from SSA to Mrs. Sortland 2; Ex. A-2, 12/10/15 Letter from SSA to J.S. 2.)  *See also* 42 U.S.C. § 404(b)(1) (providing a waiver for "any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience").  The SSA provided additional information in the attached form SSA-3105, Important Information About Your Appeal, Waiver Rights, and Repayment Options. (Ex. B-1, Form SSA-3105.)  The SSA also identified the form used for requesting a waiver,

---

[1] In connection with a motion to dismiss, the Court can consider documents that are: "attached to, incorporated by, or referred to in the pleadings;" documents "that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference," and public records, without converting the motion to a summary-judgment motion. *Dobrski v. Ford Motor Co*., 698 F. Supp. 2d 966, 974-75 (N.D. Ohio 2010) (citing *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) and other cases); *accord Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011).  The two December 2015 letters, as well as the other exhibits attached, are referred to in the Complaint and central to its allegations, as well as public records.  (*See* Ex. A, Holt Decl.; Ex. B, Griffin Decl.)

Form SSA-632-BK, and encouraged Mrs. Sortland and J.S. to seek the assistance of the SSA in completing the form, if they wished.  (Ex. A-1, 12/10/15 Letter from SSA to Mrs. Sortland 2; Ex. A-2, 12/10/15 Letter from SSA to J.S. 2.)  The two overpayments totaled approximately $27,000.  (Compl. 9, PageID.9.)

The following month, Mrs. Sortland and J.S. filed their Request for Waiver of Overpayment Recovery or Change in Repayment Rate, Form SSA-632-BK.  (Compl. 9, PageID.9.)  Their Request provides information regarding their income, assets, and expenses, including approximately $27,000 in bank and retirement accounts.  (Ex. A-7, SSA Copy of Request for Waiver; Ex. A-8, Sortlands' "Corrected Copy" of Request for Waiver.)[2]  The form also advises that Mrs. Sortland and J.S. should be prepared to present documents supporting their assertions, if asked to do so.  (Ex. A-7, SSA Copy of Request for Waiver 3.)  Examples of the documents needed include: current rent or mortgage books, savings passbooks, pay stubs, the most recent tax return, utility bills, medical bills, charge-card bills, insurance bills, and cancelled checks.  (*Id.* at 3.)  Mrs. Sortland and J.S. attached some of these types of documents to their Request.  (*See id.* at 1, 3 (noting enclosures).)

---

[2] The SSA Request for Waiver includes the version of the waiver form and attachments stored by the SSA, and considered by Ms. Colombel-Singh when making her decision; it includes items provided by Mrs. Sortland and J.S. after the July 2016 in-person meeting discussed below, as evidenced by the attachments' dates.  Sortlands' "Corrected Copy" of Request for Waiver is the version that Mrs. Sortland and J.S. provided to the administrative-law judge as a "correct" copy of their Request.  The two have some similarities.  For example, both attach a JC Penney bill.  There are also differences, e.g., the omission of J.S.'s social-security number on the SSA Request for Waiver.  The "Corrected Copy" is also the 2018 edition of the form.  Thus, the "Corrected Copy" is thus not a correct and complete copy of the Request for Waiver considered in 2016.  However, the SSA Request for Waiver appears to be incomplete, as pages 6 and 7 of the form are absent.  As explained further below, any differences or omissions in these two forms do not affect the merits of this motion.  The salient point is that Mrs. Sortland and J.S. were given an opportunity to complete the form and attach documentary evidence.  There is no dispute that they availed themselves of this opportunity.

On or about July 13, 2016, Mr. Sortland received a telephone call from Ms. Colombel-Singh, an SSA employee, requesting that they come to the Social Security Office in Benton Harbor, Michigan to discuss Mrs. Sortland and J.S.'s Request for Waiver.  (*See* Compl. 9, PageID.9.)  Mr. and Mrs. Sortland came as requested, bringing copies of their bills with them.  (*Id.*)  The meeting lasted at least more than one hour.  (*Id.* at 10.)  Ms. Colombel-Singh reviewed and totaled the bills presented in the Request for Waiver and those they brought with them.  (*Id.* at 9-10.)  They also discussed whether Mrs. Sortland and J.S. qualified for a waiver.  (*Id.*)  The Sortlands also advised that they had additional bills that they would like Ms. Colombel-Singh to consider.  (*Id.* at 10.)  Ms. Colombel-Singh provided them with envelopes to mail the bills to her, and advised that they could also bring them to the Social Security Office, if they preferred.  (*Id.*)  The Sortlands said that they would like to have Mr. Sortland's ex-wife testify that the Sortlands did not know that his other son had been receiving supplemental security income from the SSA.  (*Id.* at 11.)  They also requested access to "the file."  (*Id.*)

On August 4, 2016, Ms. Colombel-Singh denied Mrs. Sortland and J.S.'s waiver requests, and documented the decisions on forms SSA-635.  (Compl. 17, PageID.17; Ex. A-5, Form SSA-635, p. 2; Ex. A-6, Form SSA-635 , p. 2.)  Ms. Patrick signed the forms SSA-635 on August 5, 2016 in a space marked "Approved By."  (Compl. 17, PageID.17; Ex. A-5, Form SSA-635, p. 2; Ex. A-6, Form SSA-635, p. 2.)  Ms. Colombel-Singh did not deny the waiver because Mrs. Sortland or J.S. were at fault.  (Ex. A-5, Form SSA-635, p. 2; Ex. A-6, Form SSA-635, p. 2.)  She denied the waiver because she found that recovery would not defeat the purpose of Title II of the Social Security Act or be against equity and good conscience.  (*Id.*)  She noted that the household had the ability to repay the overpayment.  (*Id.*; *compare* Compl. 9, PageID.9 (the two overpayments totaled approximately $27,000), *with* Ex. A-7, SSA Copy of Request for Waiver 4

(showing approximately $27,000 in bank and retirement accounts.)  The SSA notified Mrs. Sortland and J.S. of the decision on August 5, 2016, by letter, explaining that if they disagreed, they could request review by an administrative-law judge.  (Exs. A-3, A-4, 8/5/16 Letters; *see* Compl. 12-13, PageID.12-13 (indicating an understanding that the waiver had been denied).)

Mrs. Sortland and J.S. filed a Request for Reconsideration, form SSA-561-U2.  (*See* Compl. 12-13, PageID.12-13.)  However, this form was inapplicable to Mrs. Sortland's and J.S.'s situation; it is not the next step in appealing a Request for Waiver that had been denied following a personal conference, like theirs.  The next step is to request a hearing before an administrative law judge, 20 C.F.R. § 404.930(a)(6), as indicated in the SSA's August 5, 2016 correspondence (Exs. A-3, A-4, 8/5/16 Letters).  In September 2016, Mrs. Sortland and J.S. filed such a request by submitting a Request for Hearing by Administrative Law Judge, form HA-501-U5.  (Compl. 13, PageID.13.)  Mrs. Sortland and J.S. engaged an attorney to assist them with their case in September, as well.  (*Id.*)

In October 2016, the SSA notified Mrs. Sortland and J.S. that their benefits would be withheld until the overpayment was collected.  (*Id.* at 14.)  Mrs. Sortland reduced her retirement contributions to 4% to pay the family's expenses.  (*Id.* at 15.)

The following month, as part of the hearing process, Mrs. Sortland and J.S. were given the opportunity to examine certain SSA records related to their case.  (*See id.* at 15-16.)

In September 2018, following the submission of written materials and a formal hearing with the opportunity to present witnesses, the administrative-law judge issued his decision.  (*Id.* at 21; Ex. A-9, ALJ Decision.)  The judge found in favor of Mrs. Sortland and J.S., holding that recovery of the overpayment would be against equity and good conscience.  (Compl. 21,

PageID.21.) This ruling resulted in Mrs. Sortland and J.S. receiving funds that had been recouped as overpayments. (*Id.*)

## MOTION STANDARDS

### Rule 12(b)(1)

Dismissal under Federal Rule of Civil Procedure 12(b)(1) is proper if the plaintiff cannot meet his burden of establishing subject-matter jurisdiction. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541-42 (1986); *Walters v. Leavitt*, 376 F. Supp. 2d 746, 751 (E.D. Mich. 2005). A challenge to subject-matter jurisdiction under Rule 12(b)(1) may be a facial attack, which challenges the sufficiency of the plaintiff's factual allegations; or a factual attack, which challenges the fact of subject-matter jurisdiction. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 324 (6th Cir. 1990); *Walters*, 376 F. Supp. 2d at 751. A facial attack is a challenge to the sufficiency of the complaint itself. *Ritchie*, 15 F.3d at 598. Where a plaintiff does not have standing, the Court should grant a motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction. *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008).

### Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal where the complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To state a valid claim, a complaint must contain . . . allegations respecting all the material elements to sustain recovery under some viable legal theory." *LULAC v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007). A court should dismiss a claim under Rule 12(b)(6) when the plaintiff has failed to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible where it "pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While the court should accept the complaint's factual allegations as true for purposes of Rule 12(b)(6), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the court need not accept legal conclusions, including those that are couched as factual allegations. *Id.*

The complaint must do more than just make an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). The plaintiff is required to plead " 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a)(2)). His complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). This requires "more than a sheer possibility that a defendant has acted unlawfully," and instead is satisfied only when a plaintiff pleads more than "facts that are merely consistent with a defendant's liability." *Id*. (internal citations and quotations omitted). Indeed, a complaint must have sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted); *accord id.* at 557 (factual allegations must "possess enough heft to 'sho[w] that the pleader is entitled to relief.' " (internal citation omitted)). A defense may serve as a basis for a motion to dismiss for failure to state a claim "when the statement of the claim affirmatively shows that the plaintiff can prove *no* set of facts that would entitle him to relief." *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 946 (6th Cir. 2002) (internal quotations omitted).

### *Rule 56 Standard*

Defendants' position is that all of their arguments are properly addressed under Rule 12(b)(1) or (6). However, to the extent that the Court deems it necessary, Defendants alternatively request summary judgment under Federal Rule of Civil Procedure 56. *See* Fed. R.

Civ. P. 12(d); *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The moving party has the initial burden of identifying the portion of the record that demonstrates there are no genuine issues of material fact as to an essential element of the claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003). To withstand summary judgment, the non-moving party then must produce specific facts that demonstrate a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The court views the evidence in the light most favorable to the non-moving party. *Sutherland*, 344 F.3d at 613. But the non-moving party "may not rest upon its mere allegations." *Id.* (internal quotations omitted). "The existence of a mere scintilla of evidence in support of the non-moving party's position" is not sufficient to withstand summary judgment. *Id.* The non-moving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Id.* (internal quotations omitted). There must be evidence upon which the fact finder could reasonably find for the non-moving party. *Id.*

## ARGUMENT

I.     **Plaintiffs have not alleged an actionable *Bivens* claim.**

A.     **The Supreme Court has emphasized the limited availability of *Bivens* actions.**

Despite the lack of statutory authority, the Supreme Court relied on its general remedial powers and took the unusual step of creating an implied cause of action against individual federal officials for alleged constitutional violations in *Bivens*. 403 U.S. at 397. Since *Bivens*, the Court has recognized an implied cause of action for an alleged constitutional violation on just <u>two</u> occasions. In *Davis v. Passman*, 442 U.S. 228 (1979), the Supreme Court allowed a

Congressional employee to bring a *Bivens* action under the equal-protection component of the Fifth Amendment Due Process Clause based on termination of employment.  And in *Carlson v. Green*, 446 U.S. 14 (1980), the Court recognized a *Bivens* action brought by a prisoner's estate for alleged violations of the Eighth Amendment's prohibition on cruel and unusual punishment.

In the thirty-nine years since *Carlson*, the Supreme Court has issued a steady line of decisions declining to extend the *Bivens* remedy and has sharply restricted the availability of this implied cause of action.  For example, the Court has given increased deference to federal statutory activity, expanded the concept of special factors counseling hesitation, and limited *Bivens* to individual federal employees.  *See, e.g.*, *Minneci v. Pollard*, 565 U.S. 118, 120 (2012) (refusing to allow a *Bivens* remedy against employees of a privately operated federal prison); *Bush v. Lucas*, 462 U.S. 367, 369 (1983) (rejecting *Bivens* claim arising out of an employment relationship governed by comprehensive procedural and substantive provisions); *see also Abbasi*, 137 S. Ct. at 1857 (collecting cases where Supreme Court has declined to recognize a *Bivens* claim); *Neb. Beef, Ltd. v. Greening*, 398 F.3d 1080, 1084 (8th Cir. 2005) (recognizing that "[t]here is a presumption against judicial recognition of direct actions for violations of the Constitution by federal officials or employees" and rejecting *Bivens* claim (internal quotations omitted)).

Continuing this trend, the Supreme Court recently reaffirmed the limited availability of a *Bivens* action.  In *Abbasi*, the Court ruled against plaintiffs seeking damages for the alleged violation of their Fourth and Fifth Amendment rights based on their purported unconstitutional detention and abuse following the September 11, 2001 terrorist attacks.  137 S. Ct. at 1869.  To reach this holding, the Court began by explaining that *Bivens*, *Davis*, and *Carlson* are products of an "*ancien regime*" and were decided when "the Court assumed it to be a proper judicial function

to provide such remedies as are necessary to make effective a statute's purpose." *Id.* at 1855 (internal quotations omitted). Since these decisions, the Court has "adopted a far more cautious course before finding implied causes of action" because judicial creation and enforcement of a cause of action for an alleged constitutional violation raises significant separation-of-powers concerns. *Id.* at 1855–56. Based on this notable change in the Court's approach to recognizing implied causes of action, the Court "made clear that expanding the *Bivens* remedy is now a disfavored judicial activity." *Id.* at 1857 (internal quotation omitted).

Next, the Court discussed the demanding framework for analyzing the availability of *Bivens* claims. First, a court must determine whether the case before it presents a "new *Bivens* context." 137 S. Ct. at 1859. Second, if the context is new, then the court must determine whether there is an alternative remedial structure or any other special factors counseling hesitation before authorizing a new remedy. *Id.* at 1857–58; *see also Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (outlining procedure). A *Bivens* claim in a new context is justified only if there is no alternative remedial structure and no other special factors counsel hesitation. Plaintiffs' claims do not satisfy this high standard.

B.     **Plaintiffs' *Bivens* claims arise in a new context.**

After *Abbasi*, any court faced with a *Bivens* claim must initially determine whether the case before it arises in a "new *Bivens* context," that is whether "the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Id.* at 1859.[3] Although the Court did not provide an exhaustive list of differences that are meaningful, it did provide several

_____

[3] The Court's "new context" analysis is limited to Supreme Court cases and does not include previous cases from the courts of appeals. *Abbasi*, 137 S. Ct. at 1860 (performing analysis and noting that the plaintiffs' claims "bear little resemblance to the three *Bivens* claims the Court has approved in the past").

examples:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860.  The Court further stressed that the "new-context inquiry is easily satisfied" and that "small" differences are sufficient "[g]iven this Court's expressed caution about extending the *Bivens* remedy."  *Id.* at 1865.  "[E]ven a modest extension is still an extension."  *Id.* at 1864.

Here, Plaintiffs challenge how SSA employees handled their Request for Waiver of Overpayment Recovery, arguing that the employees violated their procedural-due-process rights under the Fifth Amendment.  (Compl. 22-24, PageID.22-24.)  The gravamen of their claim is that Defendants failed to provide them with adequate notice or an adequate hearing.  (*Id.* at 22.)  This claim is meaningfully different (indeed, significantly different) from the three *Bivens* claims the Supreme Court has approved in the past.  *See Bivens*, 403 U.S. at 389, 397 (recognizing claim against Federal Bureau of Narcotics agents for handcuffing a man in his own home without a warrant in violation of the Fourth Amendment); *Davis*, 442 U.S. at 235 (recognizing a claim against a Congressman for firing his female secretary on the basis of her sex in violation of her Fifth Amendment right to be free from gender discrimination); *Carlson*, 446 U.S. at 16-17 (recognizing a claim against prison officials for failure to treat an inmate's asthma in violation of the Eighth Amendment).  None of the Supreme Court's previous *Bivens* cases involved SSA employees, monetary federal benefits (let alone the specific SSA benefits at issue here), procedural-due-process rights, or the comprehensive and complex statutory scheme governing Social Security benefits.  These differences are meaningful; therefore, Plaintiffs' claim presents a

new *Bivens* context.  *See Abbasi*, 137 S. Ct. at 1864–65.

    **C.**    **The Social Security Act provides an alternative remedial structure and other special factors counsel hesitation.**

    A *Bivens* remedy is justified only if there is no alternative remedial structure and no other special factors counsel hesitation.  In discussing this step, the Supreme Court explained that the relevant inquiry:

> must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.
>
> . . .
>
> [I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III.

*Abbasi*, 137 S. Ct. at 1857–58; *see also id.* at 1858 (noting that "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action").  The Court further noted that the existence of an alternative statutory scheme for protecting the constitutional interest may itself amount to "a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages" because it is likely indicative of congressional intent.  *Id.* at 1858 (internal quotations omitted).

    The Court's discussion about an alternative statutory scheme precluding a *Bivens* remedy is not new.  In *Bush v. Lucas*, a federal employee sued his supervisor for allegedly demoting him in retaliation for the employee's public criticism of the agency, in violation of the employee's First Amendment rights.  462 U.S. at 369-71.  The Court analyzed the legal remedies available to the employee and discussed the history of Executive and Congressional action in this area.  Ultimately, the Court rejected the *Bivens* claim because federal civil servants are "protected by an

elaborate, comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors and procedures—administrative and judicial—by which improper action may be redressed." *Id.* at 385.  The fact that the scheme did not provide for the recovery of loss due to emotional distress or mental anguish, or for attorney's fees did not save the employee's claim. *Id.* at 373 & n.9.  Congress need not provide complete relief or all the relief that would be available in a *Bivens* case. *See id.* at 373, 388-90.

The Court reiterated this concept and went a step further in *Schweiker v. Chilicky*, 487 U.S. 412 (1988).  The issue in *Chilicky* was "whether the improper denial of Social Security disability benefits, allegedly resulting from violations of due process by government officials who administered the federal Social Security program, may give rise to a cause of action for money damages against those officials" under *Bivens*. *Id.* at 414.  The Court characterized the plaintiffs as "wholly dependent on their disability benefits, and [as alleging] that they were unable to maintain themselves or their families in even a minimally adequate fashion after they were declared ineligible." *Id.* at 418.  The plaintiffs claimed damages for "emotional distress and for loss of food, shelter and other necessities proximately caused by [petitioners'] denial of benefits without due process." *Id.* at 419.

The Court emphasized that "[t]he administrative structure and procedures of the Social Security system, which affects virtually every American, are of a size and extent difficult to comprehend," with "[m]illions of claims" filed every year that "are handled under an unusually protective [multi]-step process for the review and adjudication of disputed claims." *Id.* at 424 (internal citations and quotations omitted).  For disability benefits, the Social Security Act provides for an initial review by a state agency, reconsideration by the state agency, review by a federal administrative-law judge, the opportunity to seek a hearing before the Appeals Council of

the SSA, and finally judicial review.  *Id.* at 424.  The Act makes no provision for the recovery of monetary damages against SSA employees "for unconstitutional conduct that leads to the wrongful denial of benefits."  *Id.* at 424.  The Court held that "such a remedy, not having been included in the elaborate remedial scheme devised by Congress, is unavailable."  *Id.* at 414. Consonant with *Bush*, the Court observed that "[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration," a *Bivens* remedy is not justified.  *Id.* at 423; *see also United States v. Stanley*, 483 U.S. 669, 683 (1987) ("[I]t is irrelevant to a 'special factors' analysis whether the laws currently on the books afford [the plaintiff] . . . an 'adequate' federal remedy for his [or her] injuries.").

This case arises from that very same statutory structure—the Social Security Act.  The Act provides a similar path for the determination and review of requests for waiver, like those at issue here.  *See* 42 U.S.C. §§ 404, 405.  The request for waiver receives initial review and then a personal conference, if the initial review is not favorable.  20 C.F.R. § 404.506.  If the beneficiary is unhappy with the result of the personal conference, he may request a hearing before an administrative-law judge.  20 C.F.R. § 404.930(a)(6).  The beneficiary may then apply for review before the Appeals Council of the SSA, and then district-court review.  20 C.F.R. §§ 404.967 *et seq.* (Appeals Council review), 404.981 (noting that Appeals Council review is discretionary and that appeal to a district-court judge is available regardless of whether the Appeals Council hears the case); 42 U.S.C. § 405(g) (judicial review).  Just as in *Chilicky*, the relief available is the recovery of any funds erroneously withheld; the Act does not provide for additional monetary damages against SSA employees or any other decision maker participating in the waiver process.  *See* 42 U.S.C. § 404; 20 C.F.R. § 404.503 (discussing the adjustment of

underpayments).  Accordingly, *Chilicky* requires the same result here.  A *Bivens* remedy, "not having been included in the elaborate remedial scheme devised by Congress, is unavailable." *Chilicky*, 487 U.S. at 414; *see also Mouratidis v. Stradton*, No. 19-CV-2985, 2019 WL 3233257, at *3 (E.D. Pa. July 18, 2019) (no *Bivens* claim arising from SSA's denial of an overpayment waiver).

Indeed, following *Chilicky*, the Sixth Circuit has reached that conclusion in similar cases twice under the Social Security Act and once under the Medicare Act, which incorporates much of the Social Security Act's structure.  In *McKenna v. Commissioner of Social Security Administration*, No. 97-6466, 1998 WL 466557 (6th Cir. July 31, 1998) (unpublished table decision), the plaintiff alleged that "the Commissioner acted tortiously in denying the claim for benefits and" demanded "a total of twelve million dollars in compensatory and punitive damages."  *Id.* at *1.  The court affirmed the district court's dismissal of the case, noting that in *Chilicky*, "the Supreme Court held that the improper denial of Social Security benefits allegedly resulting from due process violations by the administrators of the program could not give rise to a constitutional tort claim."  *Id.* at *2.

In *Robinson v. Secretary of Health and Human Services*, No. 89–1199, 1989 WL 109432 (6th Cir. Sept. 22, 1989) (unpublished table opinion), the plaintiff sought "compensatory and punitive damages for the deprivations he suffered following the wrongful termination" of his Social Security benefits.  *Id.* at *1.  Citing *Chilicky*, the court held, "[a]s a matter of law, no remedy exists for the hardships resulting from the unconstitutional denial of a statutory right," affirming the district court's dismissal.  *Id.*

In *Giesse v. Secretary of Department of Health and Human Services*, 522 F.3d 697 (6th Cir. 2008), the plaintiff sought a *Bivens* remedy for alleged damages stemming from purportedly

unconstitutional termination of payments under the Medicare Act in violation of his due-process rights, including, for example, compensation for having to sell his home because he did not receive the payments.  *Id.* at 700-02.  Following *Chilicky*, the Sixth Circuit held that a *Bivens* remedy was "unwarranted in the present case, as the Medicare Act has provided a mechanism to address claims of wrongful denials of benefits and provided a remedy in the form of reinstatement of that care."  *Id.* at 708 (following decisions in the Ninth and Fifth Circuits reaching similar conclusions).

Moreover, other special factors also counsel against recognizing a *Bivens* action here. The courts must often consider "a number of economic and governmental concerns" before extending *Bivens* to a new context.  *Abbasi*, 137 S. Ct. at 1856.  Such concerns include not only "the burdens on Government employees who are sued personally, [but] the projected costs and consequences to the Government itself."  *Id.* at 1858.  Here, the potential costs to the government are great.  The SSA considers waiving hundreds of millions in overpayments every year.  *See* SSA's FY 2019 Agency Financial Report 168, *available at* https://www.ssa.gov/finance/2019/ Full%20FY% 202019%20AFR.pdf (noting that the SSA waived nearly $400 million in fiscal year 2019).  The large number of waivers administered threatens a veritable "onslaught of *Bivens* actions," *Wilkie*, 551 U.S. at 562, whenever an SSA employee makes an adverse decision with respect to a beneficiary, or a decision with which a beneficiary simply disagrees.  The imposition of this "new species of litigation," *id.* (quoting *Bush*, 462 U.S. at 389), would "subject [the SSA and its employees] to the burdens of discovery and the litigation process."  *Jangjoo v. Sieg*, 319 F. Supp. 3d 207, 217 (D.D.C. 2018).  "The prospect of personal liability for official acts, moreover, would undoubtedly lead to new difficulties and expense in recruiting administrators for the [SSA] programs Congress has established."  *Chilicky*, 487 U.S. at 425.  Many highly

qualified individuals may be dissuaded from accepting such appointments.  At the same time, such an expansion of liability "would require courts to interfere in an intrusive way with sensitive functions of the Executive Branch."  *Abbasi*, 137 S. Ct. at 1861.

Just as critically, an extension of *Bivens* here would threaten causing SSA officials "to second-guess difficult but necessary decisions," *id.*, regarding SSA benefits.  Indeed, the specter of a *Bivens* lawsuit would force employees into the untenable position of choosing between risking personal liability for denying waiver requests, or authorizing questionable or inappropriate expenditures of public funds when the Social Security Act should result in a denial of waiver.  Any decision to subject federal workers to such a choice should come from Congress, if from any branch at all.  *See F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994) ("We leave it to Congress to weigh the implications of such a significant expansion of Government liability.").

In short, this Court should decline to recognize a new *Bivens* remedy in this case.

## II.      Ms. Patrick is entitled to qualified immunity.

### A.      Qualified immunity shields federal employees from *Bivens* liability.

Qualified immunity protects federal employees from *Bivens* suits in their individual capacities for actions taken in the normal course of their work, unless their conduct violates clearly established constitutional rights of which a reasonable employee in their position would have known.  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The doctrine provides a true "*immunity from suit* rather than a mere defense to liability[.]"  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *accord Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled on other grounds*, *Pearson v. Callahan*, 555 U.S. 223 (2009).  It protects "all but the plainly incompetent or those who knowingly violate the law."  *Saucier*, 533 U.S. at 202.

The purpose of qualified immunity is to allow government officials to carry out their duties without fear of personal liability or harassing litigation. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The doctrine recognizes that government employees "acting reasonably, may err," and that "it is better to risk some error and possible injury from such error than not to decide or act at all." *Dunigan v. Noble*, 390 F.3d 486, 490-91 (6th Cir. 2004).

Because the doctrine provides for immunity from suit, a defendant's entitlement to qualified immunity is a threshold question, and the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation," including discovery. *Mitchell*, 472 U.S. at 526. As a result, the immunity is "effectively lost if a case is erroneously permitted to go to trial." *Id.*

Qualified immunity generally applies unless "the contours of the asserted right were sufficiently clear that every reasonable official would have understood that what he was doing violated that right." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (citing *Ashcroft*, 131 S. Ct. at 2083). The officer's subjective state of mind is irrelevant for purposes of qualified immunity. *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001). The question is not whether the individual defendants believed that they were acting lawfully, but whether a reasonable officer could have believed that they were doing so. *Creighton*, 483 U.S. at 641.

In a number of cases, Sixth Circuit panels have employed a three-part test for qualified immunity that asks: (1) whether "the officer's conduct violated a constitutional right," (2) "whether the constitutional right was 'clearly established' at the time of the violation;" and (3) "whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams*

*v. Ingham*, 373 F. App'x 542, 546-47 (6th Cir. 2010); *accord Meals v. City of Memphis*, 493 F.3d 720, 729 (6th Cir. 2007); *Feathers v. Aey,* 319 F.3d 843, 848 (6th Cir. 2003); *cf. Pearson,* 555 U.S. at 236 (court need not address two-part test in sequence).  Other Sixth Circuit panels have employed a two-part test, and the Court of Appeals has noted but not yet resolved the inconsistency.  *See generally Occupy Nashville v. Haslam*, 769 F.3d 434, 442 n.16 (6th Cir. 2014) ("Regardless of how the test is articulated, a defendant will only be held liable if his or her actions were objectively unreasonable in view of clearly established law." (internal quotations omitted)).  The plaintiff bears the ultimate burden of demonstrating that the defendant is not entitled to qualified immunity.  *Cockrell v. City of Cincinnati,* 468 F. App'x 491, 494 (6th Cir. 2012) (once defendant claims qualified immunity, plaintiff "must show that the official violated a right so clearly established that every reasonable official would have understood that what he [was] doing violate[d] that right") (quotation omitted); *Davenport v. Causey*, 521 F.3d 544, 550 (6th Cir. 2008).

Here, Plaintiffs' claims against Ms. Patrick fail all three parts of the qualified-immunity test.

### B.    This Court should grant Ms. Patrick qualified immunity.

A plaintiff is required to allege with particularity what each defendant did to violate the Constitution.  *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (dismissing claims against federal agents for failure to allege details of their personal involvement, and only making categorical or collective allegations against them as Defendants); *Dorsey v. Barber*, 517 F.3d 389, 399 (6th Cir. 2008) (each defendant's liability must be assessed individually, based on his or her own actions).  There is no *Bivens* liability based on a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 678.  To the contrary, "each Government official . . . is

only liable for his or her own misconduct." *Id*. at 677. Accordingly, here, Ms. Patrick can only be held liable for her own actions.

Plaintiffs' allegations specific to Ms. Patrick are that Ms. Patrick should have corrected Ms. Colombel-Singh's alleged failure to give them a sufficient evidentiary hearing and proper notice of the hearing as part of her role as the person "approving" Ms. Colombel-Singh's actions on the forms SSA-635. (Compl. 7-8, 17-18, PageID.7-8, 17-18.) Plaintiffs make the legal assertion[4] that this was a "mandatory review put into the Social Security Act." (*Id*. at 17.) Plaintiffs are mistaken. Neither the Social Security Act nor its attendant regulations required Ms. Patrick to "approve" or review Ms. Colombel-Singh's decision. Title 20, § 404.506 of the Code of Federal Regulations outlines the process for waiver requests. It does not contemplate a review or approval of Ms. Colombel-Singh's decision at the personal-conference stage by a fellow field-office employee, like Ms. Patrick.[5] Rather, as discussed above, the next step in the process is review by an administrative-law judge. 20 C.F.R. § 404.930(a)(6). Thus, no statute or regulation required Ms. Patrick to review Ms. Colombel-Singh's actions—let alone the lower floor provided by the due-process clause.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations omitted). Due process is "not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria and Restaurant Workers Union v.*

---

[4] The Court need not accept erroneous legal conclusions as true at the motion-to-dismiss stage. *Iqbal*, 556 U.S. at 678.

[5] The regulations provide for an initial review by a field office employee, but that review is conducted prior to the personal-conference stage. *See* 20 C.F.R. § 404.506(c).

*McElroy*, 367 U.S. 886, 895, (1961).   Rather, it "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

Defendants are not aware of any case holding that due process requires a second SSA employee to approve the decision of another SSA employee at the personal-conference stage denying a waiver.  To determine "the specific dictates of due process," the court should consider three factors:  (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.  Procedural due process is not "meant to protect persons . . . from [a] deprivation," but rather the fundamental inquiry is "what process constitutionally is due." *Carey v. Piphus*, 435 U.S. 247, 259 (1978).

The *Mathews* factors demonstrate that due process does not demand an additional peer review of the personal-conference decision.  The first factor is private interest. *Mathews*, 424 U.S. at 335.  Here, because full retroactive payment of benefits could be (and has been) awarded, Plaintiffs' interest was in the uninterrupted receipt of Mrs. Sortland's and J.S.'s benefits pending the final decision on their claim for waiver. *See id.* at 340.  The interest is similar to several other cases involving a temporary deprivation of money that the Supreme Court has considered: a recipient deprived of welfare benefits in *Goldberg v. Kelly,* 397 U.S. 254, 263-64 (1970); a federal employee deprived of wages in *Arnett v. Kennedy*, 416 U.S. 134, 146 (1974); and a recipient deprived of Social Security disability benefits in *Mathews*, 424 U.S. at 323.  Only in *Goldberg* did the Court hold that an evidentiary hearing is required before the temporary deprivation.  The "crucial factor" in *Goldberg* was that the welfare benefits were the only means

of providing the recipient with the ability to live while he waits.  *Mathews*, 424 U.S. at 340

(quoting *Goldberg*, 397 U.S. at 264).  That factor was not present in *Arnett* or *Mathews*, nor is it

present here.  The loss of wages (*Arnett*), Social Security disability benefits (*Mathews*), or Social

Security spousal and child benefits (our case) do not cause the same level of hardship.  In all

three cases, the person would have "the possibility of access to private resources," and "other

forms of government assistance will become available where [the lost money] . . . places a

worker or his family below the subsistence level."  *Id.* at 342.  Thus, this factor does not indicate

that due process demands high levels of protection.  *Mathews* itself held that a pre-deprivation

review on a written record, later followed by review before an administrative-law judge was

sufficient, which was less process than provided here.  *Id.* at 338-39, 349.

The second factor, too, supports Ms. Patrick.  *Mathews*, 424 U.S. at 335 ("[T]he risk of

an erroneous deprivation of such interest through the procedures used, and the probable value, if

any, of additional or substitute procedural safeguards . . . .").  Here, the Social Security Act

provides a multi-layer decision and review process for waiver requests.  As already detailed in

Part I.C. above, the request for waiver receives: (1) an initial review; (2) a personal-conference

review (Ms. Colombel-Singh's role); (3) a full hearing before an administrative-law judge; (4)

discretionary Appeals Council review; and (5) district-court review.  *See* 42 U.S.C. §§ 404, 405;

20 C.F.R. §§ 404.506, 404.930(a)(6), 404.967 *et seq.*, 404.981.  Adding yet another level of

review between the personal conference (Ms. Colombel-Singh's role) and the administrative-law

judge is not necessary to due process.  The probable value would be extremely minimal.  The

existing framework provides more than sufficient protection.

The Social Security Act provides a multi-layer decision and review process for waiver

requests that sufficiently protects Plaintiffs' complaint that Ms. Colombel-Singh did not follow

the SSA's regulations and the Social Security Act during the personal-conference process.[6]
(Compl. 6, 9-11, 14, PageID.6, 9-11, 14 (asserting a failure to provide sufficient notice or
adequate hearing).)  Plaintiffs do not claim that the SSA's regulations and the Social Security
Act's procedures are deficient; to the contrary, the process as a whole worked.  "[P]rocedural due
process rules are shaped by the risk of error inherent in the truthfinding process as applied to the
generality of cases, not the rare exceptions."  *Mathews*, 424 U.S. at 344.  One alleged failure by
Ms. Colombel-Singh to follow the existing regulations at a previous stage of review—even one
causing a temporary deprivation—does not demand or even counsel in favor of the need for
additional layers of due-process protection.  *See Carey*, 435 U.S. at 259 (procedural due process
is not "meant to protect persons . . . from [a] deprivation," but the fundamental inquiry is "what
process constitutionally is due.").  The existing scheme is more than sufficient, offering even
more protections than those already upheld by the Supreme Court in *Mathews*.  *See Mathews*,
424 U.S. at 338-39, 349.  There is no need for this Court to graft additional layers of review onto
this comprehensive statutory scheme in the name of due process.

The third factor—public interest—also weighs against Plaintiffs.  *Mathews*, 424 U.S. at
335 ("[T]he Government's interest, including the function involved and the fiscal and
administrative burdens that the additional or substitute procedural requirement would entail.").
The waiver process already includes five different levels of review.  *Supra* Part I.C. (detailing
process).  Adding a sixth level—peer review of the personal-conference decision—would
unnecessarily increase the cost to the Government of administering the waiver program.  The

---

[6] Even Plaintiffs acknowledge that they received notice of the overpayment, an initial
opportunity to submit documents supporting their position, an in-person meeting with the
decision-maker (Ms. Colombel-Singh), and the opportunity to supplement their original
submission with additional materials (which they took).  *Supra* pp. 3-7.

SSA processes hundreds of millions in waivers every year.  *See* SSA's FY 2019 Agency

Financial Report 168.  Adding a sixth review layer would further increase the costs of this

program.  *See Mathews*, 424 U.S. at 347 ("We only need say that experience with the

constitutionalizing of government procedures suggests that the ultimate additional cost in terms

of money and administrative burden would not be insubstantial.").

In short, due process does not demand that this Court insert an additional level of review

into an already comprehensive statutory scheme.  Due process does not require Ms. Patrick to

conduct a review to correct any procedural errors made by Ms. Colombel-Singh at the personal-

conference stage.

However, even if this Court were to disagree, Ms. Patrick would still be protected by

qualified immunity.  *Feathers*, 319 F.3d at 848 ("First, we determine whether, based upon the

applicable law, the facts viewed in the light most favorable to the plaintiffs show that a

constitutional violation has occurred. Second, we consider whether the violation involved a

clearly established constitutional right of which a reasonable person would have known. Third,

we determine whether the plaintiff has offered sufficient evidence to indicate that what the

official allegedly did was objectively unreasonable in light of the clearly established

constitutional rights." (internal quotations omitted)).  Plaintiffs cannot meet their burden to show

that Ms. Patrick's conduct violated any clearly established law as of August 2016; given the case

law at the time, nothing about her conduct was objectively unreasonable.

For an employee to have violated a clearly established right, "the right's contours [must

have been] sufficiently definite that any reasonable official in the defendant's shoes would have

understood that he was violating it."  *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014).  The

question the employee confronted must have been "beyond debate" and resolved by "existing

precedent." *Id.* The law should not be defined "at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.* (internal quotations omitted); *see also Moseley,* 790 F.3d at 654 ("To avoid the qualified immunity defense, plaintiff was required to plead *facts* making out a violation of a constitutional right clearly established in a particularized sense. That is, the right said to have been violated must be defined in light of the specific context of the case, not as a broad general proposition." (quotations omitted)); *Hagans v. Franklin Sheriff's Office*, 695 F.3d 505, 508 (6th Cir. 2012) (noting that Supreme Court has repeatedly warned lower courts about this, and concluding that the plaintiff's assertion that the right to be free from excessive force was just "one floor down from the words of the Fourth Amendment.").  In other words, Plaintiffs must identify specific precedent where a federal employee "acting under similar circumstances" as Ms. Patrick "was held to have violated" due process.  *See White v. Pauly*, 137 S. Ct. 548, 552 (2017).  Plaintiffs cannot do so.  To the best of Defendants' knowledge, no court has so held.

The only way for Plaintiffs to attempt to show a violation of clearly established law is for them to state the law so abstractly and vaguely as to render it essentially meaningless in the specific factual scenario confronted.  (*See, e.g.*, Compl. 22-24, PageID.22-24 (asserting that Plaintiffs' due-process rights were violated because they were not given adequate notice or proper hearing on their waiver application).)  There were no cases in August 2016 to establish beyond debate that due process required Ms. Patrick to review Ms. Colombel-Singh's handling of the personal-conference decision and correct any errors.  To the contrary, as explained above, due process does not require this additional level of review.  Plaintiffs received notice of their right to request a waiver, the opportunity to present written materials, and an in-person meeting with Ms. Colombel-Singh, followed by a full hearing in front of an administrative-law judge

with the right to submit additional written materials and in-person witnesses. The hearing before the administrative-law judge provided Plaintiffs with the result that they sought. If Plaintiffs had been unhappy with the administrative-law judge's decision, still further review would have been available to them before the SSA Appeals Counsel and this Court. 20 C.F.R. § 404.967 *et seq.* 20 C.F.R. § 404.981; 42 U.S.C. § 405(g). Due process requires nothing more.

### III. Mr. Sortland does not have standing.

Constitutional standing has three elements. *Stalley*, 517 F.3d at 916. First, the plaintiff must show that he has suffered an injury-in-fact. To satisfy this element, the injury must be "both concrete and actual or imminent, not conjectural or hypothetical." *Id.* (internal citations and quotations omitted). Second, the plaintiff must demonstrate "a causal connection between the alleged injury and the . . . conduct of which he complains." *Id.* Third, the plaintiff must establish that his injury can be redressed by a favorable decision. *Id.* The plaintiff has the burden of establishing standing. *Id.*

Mr. Sortland fails the first element of this test. He has suffered no injury. The claims in this case arise from the belief that his wife's and son's SSA benefits were wrongfully withheld and their rights under the Fifth Amendment were violated. (Compl. 22-24, PageID.22-24.) He does not allege that his own SSA benefits were adversely affected. Mr. Sortland cannot satisfy the injury requirement by relying on injuries to others. Mr. Sortland "must show that *he* has suffered an injury." *Stalley*, 517 F.3d at 916 (emphasis added and internal quotations omitted). He cannot "carry on a fight on behalf of others. This is exactly what Article III standing will not permit." *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 931 (6th Cir. 2002). Accordingly, this Court should dismiss him from this lawsuit.

## CONCLUSION

In sum, Defendants respectfully request that the Court dismiss this suit.  Plaintiffs have

not stated a valid *Bivens* claim.  Qualified immunity protects Ms. Patrick.  And Mr. Sortland

should be dismissed for lack of standing.

Respectfully submitted,

ANDREW BYERLY BIRGE
United States Attorney

Dated:  December 13, 2019

*/s/ Nicole Mazzocco*
NICOLE MAZZOCCO
Assistant United States Attorney
P.O. Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404
nicole.mazzocco@usdoj.gov
Attorneys for Defendants