UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD D. SORTLAND and
VIRGINIA SORTLAND,

        Plaintiffs,

v.

UNKNOWN COLOMBEL-SINGH and
D. PATRICK,

                           /

Case No. 1:19-cv-644

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

Ronald Sortland applied for retirement benefits in October 2008. In August 2015, the Social Security Administration (SSA) discovered that it had overpaid benefits to the claimant, his wife, Virginia Sortland (monthly spouse's benefits) and their son JS (monthly child's benefits). While Ronald Sortland's benefits were not affected by the overpayments, he was the "representative payee" responsible for the benefits paid to JS.[1] After discovering the

---

[1] *See* Administrative Law Judge decision (ECF No. 15-1, PageID.197). The court summarized the representative payees' duties in *Enmrsh, Inc. v. Berryhill*, No. CV 15-1077 JCH/GBW, 2017 WL 3149367 at *8 (April 28, 2017), R&R adopted, 2017 WL 3172873 (D.N.M. June 5, 2017):

> [The] SSA imposes six responsibilities on representative payees. Three of those responsibilities deal with ensuring that all benefits accrue to the beneficiary and not the representative payee. 20 C.F.R. § 404.2035(a)-(c). Another responsibility is the submission of an accounting of benefits if requested by the SSA. 20 C.F.R. § 404.2035(e). A further responsibility is to notify the SSA of a change in circumstances that would affect the representative payee's performance. 20 C.F.R. § 404.2035(f). Finally, the representative payee is responsible to "notify [the SSA] of any event or change in [the beneficiary's] circumstances that will affect the amount of benefits [the beneficiary] receive[s], [the beneficiary's] right to receive benefits, or how [the beneficiary] receive[s] them." 20 C.F.R. § 404.2035 (d).

1

overpayments, the SSA sought to recover the overpaid funds from Virginia Sortland and Ronald Sortland (as the representative payee of JS). The claimants' requested a waiver for the overpayments, which the SSA denied.  The claimants filed an administrative appeal, which resulted in a fully favorably decision by the administrative law judge (ALJ), who found that the SSA overpaid $11,667.00 to JS and that the SSA overpaid $15,854.00 to Virginia Sortland. However, the ALJ also found that the claimants were not at fault for causing the overpayments, that recovery of the overpayments was waived, and that the claimants were not liable to repay the money.  *See* Compl. at PageID.21; ALJ's Decision (ECF No. 15-1, PageID.197-201).  Because the claimants obtained a fully favorable decision from the ALJ, they had no need to appeal the ALJ's decision to the federal court under 42 U.S.C. § 405(g).

After the ALJ entered the favorable decision, *pro se* plaintiffs Ronald Sortland and Virginia Sortland filed this lawsuit pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 503 U.S. 388 (1971), alleging that two employees at the SSA's office in Benton Harbor, Michigan, defendants Ms. Colombel-Singh and D. Patrick, violated their federal due process rights when addressing the overpayments.  *See* Compl. (ECF No. 1, PageID.8).  This matter is now before the Court on defendants' combined "Motion to dismiss, or, alternatively, for summary judgment" (ECF No. 14).

### I.  Plaintiffs' claims

Plaintiffs' allegations are summarized as follows.  On December 19, 2015, plaintiff Virginia Sortland received an overpayment and demand letter from the SSA in the amount of $15,024.00 for overpayment of "child in care" benefits.  Compl. (ECF No. 1, PageID.9).  The Sortlands' son, JS, also received an overpayment letter in the amount of $11,667.00.  *Id*.

2

To place plaintiff's allegations in context, the Court will address information contained in the SSA records related to the overpayments.[2] As discussed, Ronald Sortland filed an application for retirement benefits in October 2008. In January 2009, Ronald's son, JS, became entitled to monthly child's benefits, and his wife, Virginia Sortland, became entitled to monthly spouse's benefits. Decision at PageID.197. The overpayments occurred because Ronald's son from a previous marriage, Jason Keegan, became eligible for benefits as an adult child through Ronald's earnings record. *Id*. at PageID.199. Although the overpayments began in 2009, the claimants were not notified of the problem until August 2015. *Id*.

In a letter dated December 10, 2015, addressed to "Ronald D. Sortland for [JS]", the SSA provided "new information about the child's benefits which [JS] receives on this Social Security record, that from January 2010 through November 2015, the SSA paid the claimant $9,024.00 too much in benefits, that from January 2010 through November 2015 they paid him $11,667.00 more than he was due, and that "You should refund this overpayment of $9,024.00 within 30 days." Letter (Dec. 10, 2015) (ECF No. 15-1, PageID.103). As discussed in the ALJ's decision, the actual overpayment to JS was $11,667.00. PageID.199. In a letter dated December 10, 2019, the SSA advised Virginia Sortland that she had received an overpayment of $15,709.00 from November 2009 through November 2015, and that "[y]ou should refund this overpayment

---

[2] There is no administrative record in this case. The SSA records were attached to the declaration of Brandyann Holt, Team Leader in the Center for Disability, Integrity, and Program Support at the SSA. *See* Holt Decl. (ECF No. 15-1, PageID.93-96).

within 30 days." Letter (Dec. 10, 2016) (ECF No. 15-1, PageID.98). As discussed in the ALJ's decision, the actual amount of the overpayment to Virginia was $15,854.00. PageID.199.

In response to these letters, the "Sortland family" filed a form for "Waiver of over-payment recovery or change in repayment rate" on January 19, 2016. Compl. at PageID.9. Some months later, on July 13, 2016, defendant Colombel-Singh asked plaintiff Ronald Sortland to come to the SSA Field Office in Benton Harbor the next day. *Id.* Plaintiffs did not address the purpose of the meeting, other than to allege that they brought copies of bills related to their budget and that defendant Colombel-Singh "spent over an hour adding up the bills." *Id.* at PageID.10. Ms. Colombel-Singh told plaintiffs that after all of the bills were paid, they had $300.00 left (each month) to pay back the overpayment. *Id.* Plaintiffs said that they had other bills at home and that "there would be no money to pay the [o]verpayment." *Id.* Ms. Colombel-Singh agreed to look at the bills and gave plaintiffs envelopes to mail the bills or to bring them to the office. *Id.*

Plaintiffs allege that they "were developing a feeling of anxiety" and that defendant Colombel-Singh "was abusing her position of authority over us." *Id.* Plaintiff Virginia Sortland said that with the extra bills they would have no money left in their monthly budget to re-pay the overpayment, at which time Ms. Colombel-Singh told her "that if she didn't pay back the [o]verpayment when she retired the [o]verpayment would catch up to her and she would be paying it back in full with interest" and that she was young enough to get a second job to re-pay the overpayment. *Id*. at PageID.11. Plaintiffs allege "[t]his outrageous conduct that [sic] went beyond the bounds of decency, and the Defendant knew that her conduct was causing us Emotional Distress." *Id*. Plaintiffs also told Ms. Colombel-Singh that they had a defense to re-paying the

4

overpayment because it would be against equity and good conscience under the Social Security regulations and would defeat the purpose of Act. *Id*. Ms. Colombel-Singh told plaintiffs that money was not a consideration of that defense and that they were at the office "to figure how much money we could pay per month." *Id*. Plaintiffs came under extreme stress because they could not afford to refund the overpayment because they had just bought a house, they could lose their car, they could no longer afford their son's braces, and they might have to file for bankruptcy. *Id*. at PageID.12.

To fill in the gaps of plaintiff's complaint, the Court looks to documents submitted by defendants. On August 5, 2016, the SSA issued determinations which denied the waivers. Defendant Colombel-Singh made the determinations, which were approved by defendant D. Patrick. Waiver Determinations (ECF No. 15-1, PageID.110-117).

In a letter dated August 5, 2016, the SSA Office in Benton Harbor advised Virginia Sortland as follows:

> In order to waive an overpayment both of the following conditions must be met: The person is without fault and recovery would either defeat the purpose of the Act or be against equity and good conscience.
>
> During our personal conference with you on July 28, 2016, we explained that you were overpaid due to your work and the fact that someone else came on the record which would affect the amount of benefits you were entitled to.
>
> You provided proof of your income and expenses, and after reviewing those, it was determined that your income exceeds your expenses which reflects that you have the ability to repay the overpaid funds.
>
> If you disagree in any way with this determination, you have the right, within 60 days of the date you receive this notice, to request that the determination be reviewed by an administrative law judge of the Office of Disability Adjudication

5

> and Review.  If you request a hearing, please submit any additional information you have.
>
> If you call or come into the office, please have this letter available and ask for Mrs. Colombel-Singh.

Letter (ECF No. 15-1, PageID.107).   The SSA sent a nearly identical letter dated August 5, 2016 to "Ronald Sortland for [JS]."   Letter (ECF No. 15-1, PageID.109).

A few weeks later, on August 26, 2016, plaintiffs gathered bills and brought them to the field office.  Compl. at PageID.12.  They were told by non-party Ms. Coshow that the bills would be placed in the file, and that either she or the supervisor, "Mr. Z", would call them by the end of the month.  *Id*.  Plaintiffs received a call from someone on August 31, 2016, stating that the office had received the information, it was in the file, and that it was up to Ms. Colombel-Singh as to whether they would have "another hearing."  *Id*.  One of the plaintiffs advised that they had filed a request for reconsideration.  *Id*. at PageID.12-13.  Plaintiffs became depressed.  *Id*. at PageID.13.

On September 9, 2016, plaintiffs filed a "Request for hearing by Administrative Law Judge."  *Id*.  Plaintiffs hired a Social Security Attorney to represent them and paid her $750.00.  Two weeks later, the attorney called them into the office and said that all they could do was to file a reconsideration with Social Security in Chicago and hope for another hearing.  *Id*. Plaintiffs read some pamphlets provided by the attorney, performed research, and determined that their Fifth Amendment Due Process Rights had been denied.  *Id*. at PageID.13-14.   Specifically,

> The Phone call was substituted for Notice and a next day Hearing with Defendant Singh was substituted as a proper Hearing without presenting witnesses, submitting additional evidence, securing updated financial information, and reviewing the complete file at least a week before the hearing and Defendant D. Patrick approved

6

>all this as being a proper Notice and Hearing in accordance with *Goldberg Kelly* 397 U.S. 254 (1970).

*Id*. at PageID.14.

On October 28, 2016, plaintiffs "were informed that the Social Security Administration would be taking all of Virginia and or Son, [JS], his dependant [sic] Social Security benefits until the Overpayment was paid." *Id*. Plaintiffs allege that defendant Colombel-Singh had determined to take "all of the money, over $1,000.00 per month" to pay back the overpayments when she knew that they only had $300.00 available to re-pay the money. *Id*. In response to this loss of benefits, plaintiff Virginia Sortland had to reduce her 401k contributions from 13% to 4% to give the family more cash flow. *Id*. at PageID.15.

On November 5, 2016, the ALJ advised plaintiffs that the case file was ready for inspection. Plaintiffs made a copy of the file. *Id*. at PageID.15-16. After reviewing the file, plaintiffs determined that their Fifth Amendment Due Process rights had been denied by defendant Colombel-Singh and that defendant D. Patrick was at fault for reviewing and approving her decision. *Id*. at PageID.16. Plaintiffs alleged that the prevailed in the dispute:

>We won our case with the Admin Law Judge finding a Fully Favorable decision for our case on the same defense of "Against Equity and Good Conscience" in September 2018. We received some of the money we had paid back to The Social Security Administration in January 10 and 24. We are waiting for then to refund the remaining money we paid in for the Overpayment.

PageID.21.

To place plaintiffs' allegations in the context, the Court will address the findings set forth in the ALJ's decision. The ALJ held an administrative hearing on March 16, 2018, and entered the decision on September 14, 2018. Decision at PageID.197-201. Based upon the

7

exhibits and hearing testimony, the ALJ concluded that the claimants were not at fault in causing the overpayment.  PageID.199-200.  The overpayments occurred because Ronald Sortland's son Jason Keegan became eligible for Title II benefits through Ronald's earnings record as a disabled adult child.  PageID.199. This additional beneficiary resulted in a reduction of the benefits payable to Virginia Sortland and JS.  PageID.199.  Although the overpayments began in 2009, the claimants were not notified of the overpayments until August 2015.  *Id*.  The ALJ accepted Ronald's testimony that he was unaware that Jason Keegan became entitled to benefits until he received a notice from the SSA.  PageID.199.  The ALJ also heard from Ronald's former wife, Shelly Steffey, who testified that they were divorced in 1990, that Jason Keegan began receiving Supplemental Security Income (SSI) benefits in 1994, and that Ronald would not have known that Jason was eligible for disabled adult child's benefits.   PageID.199-200.

The ALJ found that recovery of the overpayments would be against equity and good conscience, because the claimants changed their financial position for the worse based on the anticipation of receiving monthly benefits from the SSA and on their actual receipt of those benefits.  PageID.200.  For these reasons, the ALJ entered a fully favorable decision, finding that "[r]ecovery of the overpayment is waived," and that "the claimants are not liable for repayment of $11,667 of child's benefits, and $15,854 of spouse's benefits overpaid during the period November 2009 to November 2015 (20 CFR 404.506)."  PageID.201.

In their *Bivens* action, plaintiffs allege that defendants Colombel-Singh and D. Patrick violated their Fifth Amendment Procedural Due Process rights and by denying them notice and a hearing.  Compl. at PageID.22. Plaintiffs referred to defendants' conduct as the outrageous

8

acts by a "rogue" federal employee Ms. Colombel-Singh "to take matters into [her] own hands." Compl. *Id.* at PageID.16-17.  Plaintiffs also allege that Ms. Colombel-Singh partnered with another federal employee, D. Patrick, to deny plaintiffs' their constitutional rights. *Id*.  For his relief, Ronald Sortland demands $25,000.00 from each defendant in compensatory damages for intentional or negligent infliction of emotional distress, and $125,000.00 from each defendant for punitive damages. *Id.* at PageID.24-25. For her relief, Virginia Sortland demands the same compensatory and punitive damages as her husband, as well as an additional $5,000.00 from each defendant "for loss of 401 K gains from October 2016 - December 2018." *Id*.  Plaintiffs seek total damages in the amount of $610,000.00.

## II.    Defendants' motion for lack of subject matter jurisdiction

Defendants have filed a combined motion.  Their first motion seeks "to dismiss this action" for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) (*see* PageID.61). This relief is not consistent with their brief, in which they seek to dismiss only plaintiff Ronald Sortland's action for lack of standing.  Given this record, the Court construes defendants' motion as directed at Ronald Sortland.

"Challenges to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) come in two varieties: a facial attack or a factual attack."  *Wayside Church v. Van Buren County*, 847 F.3d 812, 816 (6th Cir. 2017) (internal quotation marks omitted).  "A facial attack on the subject-matter jurisdiction . . . questions merely the sufficiency of the pleading."  *Id*.  A factual attack, on the other hand, raises a factual controversy requiring the district court to weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist."

9

*Id*.  Defendants' cursory brief did not explicitly state whether they are making a facial or a factual attack on plaintiff Ronald Sortland's standing. Defendants' Brief (ECF No. 15, PageID.90). Defendants appear to make a facial attack against Ronald Sortland's standing because they cite only allegations in the complaint.  *Id*.  However, this Court cannot ignore the 116 pages of exhibits attached to defendants' brief.  *See* Exhibits (ECF Nos.15-1 and 15-2).  Accordingly, the Court construes defendants' motion as involving a factual attack.

As the party invoking federal subject matter jurisdiction, plaintiff Ronald Sortland "has the burden of demonstrating that he satisfies each element of Article III standing." *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008).  "The irreducible constitutional minimum of standing contains three elements."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  First, the plaintiff must show that he has suffered an "injury" in fact, meaning that he suffered a harm that is both "concrete" and "actual or imminent, not conjectural or hypothetical." *Stalley*, 517 F.3d at 916.  Second, the plaintiff must establish a causal connection between the alleged injury and the defendants' conduct of which he complains.  *Id*.  Third, the plaintiff must demonstrate that the injury is redressable in this action.  *Id*.

Defendants contend that Ronald Sortland failed to allege that he suffered an actual injury because "[h]e does not allege that his own SSA benefits were adversely affected"; rather, his claims involve "the belief that his wife's and son's SSA benefits were wrongfully withheld and their rights under the Fifth Amendment were violated."  Defendants' Brief at PageID.90.

Defendants' cursory characterization of Ronald Sortland's allegations fails to acknowledge two relevant facts: (1) Ronald Sortland was the representative payee for claimant JS;

10

and (2) the SSA sought to collect JS' overpayments directly from Ronald Sortland. As one court explained, the SSA has an administrative procedure to recover an overpayment from a representative payee such as Ronald Sortland:

> The SSA's determination whether or not an overpayment must be repaid is an initial decision subject to judicial review.  20 C.F.R. §§ 404.902, 416.1402; *Monet v. Mathews*, 535 F.Supp.2d 132, 134 (D.D.C.2008); *Scott v. Commissioner of Social Security Admi.*, 2002 WL 31164581, *6 (N.D.N.Y.2002). Although the "Act itself does not expressly provide a cause of action to recover overpayments from a representative payee  .  .  .   where a statute provides for payments to a beneficiary's representative, the court may reasonably infer that Congress intended for recovery from that representative of any overpayments."  *Corr for Corr v. Sullivan*, 725 F. Supp. 413, 414 (N.D. Ind. 1989).

*Jackson v. United States*, No. 07 CV 7216, 2008 WL 4089540 at *3 (N.D. Ill. Aug. 21, 2008).  In short, the SSA had an $11,667.00 claim against Ronald Sortland and gave him 30 days to pay up.

After the local SSA Office denied the waiver of repayment, the matter went to the next step of the administrative review process.  As discussed, the ALJ reversed the initial determination and entered a fully favorable decision, finding that "[r]ecovery of the overpayment is waived," and that the claimants are not liable for repayment of either JS' benefits ($11,667.00) or plaintiff Virginia Sortland's spouse's benefits ($15,854.00).  PageID.201.  As a result, the ALJ allowed the Sortland family to keep the overpayments.

While the ALJ found in the claimants' favor, the record reflects that for over 2½ years (December 2015 to September 2018), Ronald Sortland, as the representative payee, faced the prospect of having to repay about five years of overpayments.  If the ALJ had denied the waiver, he could have ordered Ronald Sortland to re-pay the overpayment made to JS.  Under this scenario, Ronald, in his capacity as representative payee, would have standing to appeal the

11

ALJ's decision to the federal court pursuant to 42 U.S.C. § 405g. *See, e.g., Graverson v. Commissioner of Social Security*, No. 2:18-CV-228-FTM-MRM, 2019 WL 1552737, at *1 (M.D. Fla. Apr. 10, 2019) (reversing and remanding ALJ's decision finding that the plaintiff, a representative payee for his son, received an overpayment of his son's Supplemental Security Income benefits and was denied a request for a waiver of the overpayment of those benefits).

However, because the claimants prevailed at the administrative level, Ronald Sortland had no basis to appeal the ALJ's decision and, due to the waiver, he did not suffer any monetary damages. While the claimants prevailed in the administrative proceedings, Ronald Sortland now seeks to assert a *Bivens* action against the local federal employees who initially denied his waiver. His only "injuries alleged" are emotional distress. In the complaint, plaintiffs state that they suffered emotional distress while dealing with defendant Colombel-Singh: they experienced anxiety; they "became offended" that defendant suggested that Virginia Sortland could get a second job to help pay back the overpayment; they felt frustration, helplessness, and anxiety because they might lose their house, lose their car, lose their son's braces, and have to file for bankruptcy; they became depressed because no one would listen to them or look at their evidence; and, Ronald's anxiety was so bad that he "could only sleep about three hours a night, then lay there all night awake trying to figure out how to pay all of these bills and [whether] we would have a house to live in and a car to drive the next day". Compl. at PageID.10-15.

Without considering the merits of the *Bivens* claim, *see* discussion *infra*, the question for the Court is whether Ronald Sortland's alleged injuries are sufficient "actual injuries" to establish Article III standing. "The concept of actual injury at common law is a broad one,

12

and the Supreme Court has recognized that 'compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation . . . , personal humiliation, and mental anguish and suffering.' " *Randall v. Prince George's County, Md.*, 302 F.3d 188, 208 (4th Cir. 2002) (quoting *Memphis Community School District v. Stachura*, 477 U.S. 299, 307 (1986). "Actual injury therefore may include emotional distress." *Id.* Such evidence must, however, establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated; neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a constitutional violation occurred supports an award of compensatory damages." *Id.* at 209 (internal quotation marks omitted). *See also Ricketson v. Experian Information Solutions, Inc.*, 266 F. Supp. 3d 1083, 1090 (W.D. Mich. 2017) (the concrete harm from an informational injury under FCRA can take many forms, including the emotional distress); *Davis v. Astrue*, 874 F.Supp.2d 856, 863 (N.D. Cal. 2012) ("[M]any courts have found that emotional distress may constitute an injury-in-fact for purposes of standing").

Here, Ronald Sortland has articulated demonstrable emotional distress which is sufficient to satisfy Article III's injury-in-fact requirement. Accordingly, defendants' motion to dismiss for lack of subject matter jurisdiction should be denied.

## III. Defendants' motion for summary judgment

### A. Legal standard for summary judgment

The Court will treat defendants' motion as brought pursuant to Fed. R. Civ. P. 56.[3] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

---

[3] While defendants also move to dismiss under Fed. R. Civ. P. 12(b)(6), this motion is subsumed in their motion for summary judgment. In this regard, defendants have included 116 pages of declarations and exhibits. *See* Brandyann Holt Decl. (ECF No. 15-1, PageID.92-201) and Michelle Griffin Decl. (ECF No. 15-2, PageID.202-207).

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.     Discussion

Both plaintiffs have standing to file this lawsuit.  However, their *Bivens* claims fail.  As discussed, plaintiffs appealed the waiver determination to an ALJ and obtained a fully favorable decision.  In the end, plaintiffs reaped a financial benefit from the messy affair by keeping over $27,000.00 paid to them in error.  Now, plaintiffs seek compensatory and punitive damages against the individual SSA employee who initially denied their waiver and the SSA employee who approved the denial on the ground that these individual employees violated their procedural due process rights.

"*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right."  *Carlson v. Green*, 446 U.S. 14, 18 (1980).  While *Bivens* provides a non-statutory remedy, "the courts will not imply a *Bivens* remedy where Congress has adopted a comprehensive remedial scheme."  *Davis v. Billington*, 681 F.3d 377, 381 (D.C. Cir. 2012) (internal quotation marks omitted).  As the Sixth Circuit explained in *Giesse v. Secretary of Department of Health & Human Services*, 522 F.3d 697 (6th Cir. 2008), *Bivens* actions do not extend to disputes involving Social Security benefits:

> The Supreme Court, however, has noted that the absence of a statutory remedy for a constitutional violation does not imply that courts should award monetary damages, and has cautioned lower courts against extending *Bivens* into new contexts. *Schweiker v. Chilicky*, 487 U.S. 412, 421–22, 108 S.Ct. 2460, 101

> L.Ed.2d 370 (1988). In *Schweiker*, the Court refused to extend a *Bivens* claim to a Social Security beneficiary who had been denied benefits wrongly. Although the benefits were restored eventually, the beneficiary suffered injury beyond the amount he lost in benefits. In refusing to recognize *Bivens* as a remedy for alleged constitutional violations in the mishandling of Social Security claims, the Court acknowledged that doing so would deprive claimants of complete relief in situations where they had been wrongly denied benefits. *Id.* at 428–29, 108 S.Ct. 2460 (citing *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)). Nevertheless, the Court noted that *Bivens* was unsuited to instances where Congress had already provided "meaningful safeguards or remedies for the rights of persons. . . ." *Id.* at 425, 108 S.Ct. 2460.

*Giesse*, 522 F.3d at 707-08. *See, e.g., Jaihiem v. Social Security Area Directors*, No. 1:11-CV-104-TCB/AJB, 2011 WL 13318795 at *4 (Feb. 8, 2011), *R&R adopted*, 2011 WL 13318941 (N.D. Ga. March 24, 2011) (Because the Supreme Court "explicitly refused to allow a *Bivens* action for damages for claimants who are denied Social Security benefits given the remedial scheme for Social Security claimants, *Chilicky*, 487 U.S. at 428-29, so it follows that Plaintiff cannot bring *Bivens* damages claims against ALJ Bartelt and the Employee Defendants for any role they had in the denial, processing or termination of benefits *or in making findings relating to overpayment of benefits*.") (emphasis added).

For these reasons, plaintiffs cannot pursue a *Bivens* action against defendants Colombel-Singh and D. Patrick related to their roles in handling the collection of the SSA's overpayments. Accordingly, defendants' motion for summary judgment should be granted.[4]

---

[4] In reaching this determination, the undersigned finds it unnecessary to address defendant Patrick's claim that she is entitled to qualified immunity.

### III.     Recommendation

For the reasons set forth above, I respectfully recommend that defendants' combined motion (ECF No. 14) which seeks to dismiss plaintiff Ronald Sortland for lack of subject matter jurisdiction, and which also seeks summary judgment as to both Ronald Sortland and Virginia Sortland, be **GRANTED** and that this action be **TERMINATED**.


Dated:   July 14, 2020                                                          /s/ Ray Kent
                                                                                            United States Magistrate Judge


**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).